UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>MARCOS GALLEGOS-APARICIO<br><br>Defendant. | Case No.: 19-cr-2637-GPC<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT**<br><br>**[ECF No. 29]** |

Before the Court is Defendant Marcos Gallegos-Aparicio's ("Defendant") motion to dismiss the indictment. (ECF No. 29.) On May 20, 2020, the Government filed an opposition. (ECF No. 37.) On July 16, 2020, Defendants filed a reply. (ECF No. 46.) On July 23, 2020, the Court heard oral argument on Defendant's motion. (ECF No. 51.) Following oral argument, Defendant submitted an additional declaration and supplemental authority. (ECF Nos. 52, 53.)

For the following reasons, and considering the applicable law and the Parties' arguments, the Court **DENIES** Defendant's motion.

/ / /

/ / /

/ / /

1

## I. Background

### A. Statement of the Case

On July 12, 2019, an Indictment was filed charging Defendant with Attempted Unlawful Entry by an Alien, a felony, in violation of 8 U.S.C. § 1325(a)(1).[1] The Indictment alleges that Defendant committed the crime having previously being convicted for a violation of illegal entry under 8 U.S.C. § 1325. (ECF No. 18).

### B. Facts of the Instant Charge

On May 13, 2019, at approximately 1:00 p.m., Mr. Gallegos-Aparicio was detained and questioned by Border Patrol Agent ("BPA") Mauler who responded to a seismic intrusion device activation in an area known to Border Patrol agents as the "172 Tower." (ECF No. 1 at 2; ECF No. 37 at 2; ECF No. 29-1 at 2, Ex. D.) That area is located "approximately twenty miles east of the Tecate, California Port of Entry and approximately half a mile north of the United States/Mexico International Boundary." (ECF No. 1 at 2; ECF No. 37 at 2.) After arriving at 172 Tower, BPA Mauler followed shoeprints heading northbound for approximately 20 minutes until he encountered Defendant, along with three other individuals, attempting to hide behind some large bushes. (ECF No. 1 at 2; ECF No. 37 at 2.)

Next, BPA Mauler performed an immigration inspection. (ECF No. 37 at 2.) Defendant stated he was a citizen of Mexico and did not have proper immigration documents. (ECF No. 1 at 2; ECF No. 29-1 at 2; ECF No. 37 at 2.) At about 1:25 p.m., Defendant was placed under arrest and transported to a Border Patrol station. (ECF No. 29-1 at 2–3.) A subsequent a fingerprint query confirmed Defendant was a citizen of Mexico and was most recently removed from the United States on May 3, 2019. (ECF No. 1 at 2; ECF No. 37 at 3.)

---

[1] Mr. Gallegos-Aparicio was also found guilty of the same offense in 2001. (ECF No. 1 at 3.) According to defense counsel, the records from 2001 cannot be produced and therefore the government cannot prove the fact of any conviction in 2001. (ECF No. 46 at 2.)

**C. Facts Relating to the Prior Illegal Entry Violation**

On February 29, 2012, Mr. Gallegos-Aparicio, pled guilty to a misdemeanor charge of illegal entry in violation of 8 U.S.C. §1325. (ECF No. 1 at 3.) Like other defendants charged with the same crime along the Southwest border, he proceeded through "Operation Streamline." (ECF No. 29-1 at 3–4, Ex. A.) Arizona's "Streamline" Court processes between 50–70 defendants per day. (*Id.*)

At Mr. Gallegos-Aparicio's 2012 misdemeanor plea colloquy, the Streamline Court omitted the necessary element that Defendant's entry be "free from official restraint." (ECF No. 29-1 at 6, Ex. B.) The Court stated:

> THE COURT: . . . Count Two charges the petty offense of Illegal Entry. The elements of the offense are that you're a citizen of a country other than the United States, you entered the United States from Mexico, and you crossed the border away from a port of entry so you wouldn't be inspected by Immigration officials. Do all seven of you understand the charge against you in Count Two?
>
> THE INTERPRETER: "Yes" by all.

(*Id.*) Defendant also alleges that he "was not advised of the fact that the misdemeanor conviction could be a predicate to enhance any future charges of illegal entry from a misdemeanor to a felony." (ECF No. 29-1 at 16.)

## II. Legal Standard

**A. Federal Rule of Criminal Procedure 11 & Waiver**

Under Rule 11, a court "must address the defendant personally in open court" and must "inform the defendant of, and determine that the defendant understands," the consequences of his plea before accepting a guilty plea. Fed. R. Crim. P. 11(b)(1). The court must also "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)," and that there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(2)–(3).

The Supreme Court in *Timmreck* foreclosed a defendant's right to collaterally attack a conviction for certain Rule 11 violations. *U.S. v. Timmreck*, 441 U.S. 780, 785 (1979). As a result, "collateral relief is not available when all that is shown is a failure to

comply with the formal requirements of [Rule 11]." *U.S. v. Lopez-Beltran*, 619 F.2d 19, 20 (9th Cir. 1979) (citation omitted); *see also Hill v. U.S.*, 368 U.S. 424, 429 (1962). And, while some exceptions exist for defendants to collaterally attack prior convictions, these exceptions generally apply where the prior conviction relies on a violation of defendant's right to counsel. *Custis v. U.S.,* 511 U.S. 485, 486 (1994) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)); *see also Burgett v. Texas*, 389 U.S. 109 (1967); *U.S. v. Tucker*, 404 U.S. 443 (1972).

Additionally, a defendant's decision to waive his right to a collateral attack is "generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *U.S. v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001); *see also U.S. v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). Courts enforce valid waivers, even if the potential claims appear meritorious, "because the whole point of a waiver is the relinquishment of claims regardless of their merit." *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (quoting *U.S. v. Medina–Carrasco*, 815 F.3d 457, 462–63 (9th Cir. 2015) (internal quotation marks, alterations, and emphasis omitted). "The fact that [a defendant] did not foresee the specific issue that he now seeks to appeal does not place the issue outside the scope of the waiver." *U.S. v. Cisneros-Cuevas*, No. 15-CR-1837-BAS, 2017 WL 432817, at *2 (S.D. Cal. Jan. 31, 2017) (quoting *U.S. v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995)).

Also, the failure of a defense counsel to advise his client that he was waiving a right to collaterally attack his conviction does not necessarily invalidate the waiver. As the Ninth Circuit recently noted, "[t]he Supreme Court's 'decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty.'" *U.S. v. Chavez-Diaz*, 949 F.3d 1202, 1210 (9th Cir. 2020) (quoting *U.S. v. Broce*, 488 U.S. 563, 573–74 (1989)).

### B. Plain Error Rule

To warrant relief despite the presence of a valid waiver, Defendant must show there was an error of "constitutional magnitude which had a substantial and injurious

effect or influence on the guilty plea or the jury's verdict," *U.S. v. Cisneros-Cuevas*, 2017 WL 432817, at *2 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)), such that it renders the plea, and therefore the waiver, unknowing or involuntary. The record must show that the defendant waived their rights "intelligently and understandingly" for a plea to be considered voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

A defendant who fails to object to a Rule 11 error during trial must satisfy the plain error rule on appeal. *See U.S. v. Vonn,* 535 U.S. 55, 58 (2002) (plain error was the correct legal test) (citing Fed. R. Crim. P. 52(b)); *U.S. v. Roblero–Solis*, 588 F.3d 692, 701 (9th Cir. 2009) (plain error is the correct legal rule where Rule 11 errors were not preserved). This standard is much the same as the "harmless error" standard of review, except that under "harmless error" standard of review, the Government bears the burden of proving beyond a reasonable doubt that any error was harmless. *U.S. v. Benamor*, 937 F.3d 1182, 1190 (2019)*; U.S. v. Aguilar-Vera*, 698 F.3d 1196, 1199 (9th Cir. 2012). In contrast, under the plain error rule, it is the defendant who bears the burden of persuasion with respect to prejudice. *See U.S. v. Martinez,* 277 F.3d 517, 527, 532 (2002) (placing burden on the defendant to show plain error in the context of Rule 11). "This burden-shifting is dictated by a subtle but important difference in [Rule 52(a) and Rule 52(b)'s] language." *U.S. v. Olano,* 507 U.S. 725, 734–35 (1993).

To establish plain error, a defendant must show that (1) there was error, (2) that is plain, and (3) that it affects substantial rights. *Id.* at 732. "Any variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." *Aguilar-Vera*, 698 F.3d at 1200 (quoting Fed. R. Crim. P. 11(h)). And, even when a mistake *does* affect substantial rights, courts should exercise their discretion to correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *U.S. v. Minore*, 292 F.3d 1109, 1117 (9th Cir. 2002) (quoting *Olano,* 507 U.S. at 732) (brackets and internal quotations omitted).

## III. Discussion

Defendant moves to dismiss his indictment on the grounds that his prior 2012 misdemeanor conviction was unconstitutional and therefore is invalid as a prior predicate illegal entry conviction. For the reasons set out below, the motion to dismiss is **DENIED**.

### A. Defendant Cannot Collaterally Attack his Predicate Offense.

8 U.S.C. § 1325(a)(1) provides in pertinent part:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers … shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

As a threshold issue, the Government argues that Defendant lacks the power to collaterally attack his prior § 1325 conviction. The Government maintains that the only permissible collateral attack is asserting a violation of the right to appointed counsel under *Custis v. United States*, 511 U.S. 485, 493–97 (1994). (ECF No. 37 at 4–5.) Alternatively, the Government argues that Defendant's challenge is foreclosed by *Lewis v. United States*, 445 U.S. 55 (1980). (ECF No. 37 at 5–7.)

Defendant contends, in contrast, that neither case applies. Defendant highlights the fact that § 1325 does not explicitly bar collateral challenges to predicate misdemeanor illegal entry convictions and only regulates challenges to "underlying deportation order[s]" under § 1325(d). (ECF No. 46 at 16.) Defendants observes that, prior to the addition of § 1325(d), Due Process concerns required courts to permit defendants to raise challenges against deportation orders. (*Id.* (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987)). Defendant, moreover, distinguishes *Lewis* and *Custis* as inapposite, noting that they involve the Federal Firearms Act and 18 U.S.C. § 921(a)(2), a vastly different statute, and thus are driven by concerns inapplicable here, including differing statutory language, comity, and state law considerations relevant to what offenses can be considered predicates. (ECF No. 46 at 16–17.)

Defendant is correct that § 1325 does not explicitly bar a collateral challenge of a predicate conviction, however, nor does it authorize a challenge. The text and background of § 1325 does not indicate that Congress intended to permit a § 1325 defendant to contest the validity of an underlying prior conviction. Further, Section 1325's express language does not suggest that only a "lawful" conviction may be an element of the offense. Moreover, *Mendoza-Lopez* concluded that Due Process requires the availability of a collateral challenge to the use of a deportation proceeding as an element of a criminal offense where the deportation proceeding effectively eliminated the right of the alien to obtain judicial review. *Mendoza-Lopez*, 481 U.S. 836–42. Here, the § 1325 conviction was obtained following a judicial proceeding and judicial review was available to remedy a denial of constitutional right or statutory guarantees, absent a waiver of appeal rights and collateral attack. In that way, a conviction under Operation Streamline is arguably unlike *Mendoza-Lopez*.

Meanwhile, the Court agrees with Defendant that *Lewis* is inapposite. In *Lewis*, the U.S. Supreme Court permitted the use of an uncounseled felony conviction as the basis for "imposing a civil firearms disability, enforceable by a criminal sanction." *Lewis*, 445 U.S. at 67. In doing so, the *Lewis* court distinguished *Gideon v. Wainwright*, 372 U.S. 335 (1963), where the court struck down a state felony conviction obtained without counsel, and without a valid waiver of counsel, as unconstitutional under the Sixth and Fourteenth Amendments. The Supreme Court concluded that the federal gun laws "focus not on reliability [of the prior conviction], but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Id.* Here, in contrast, the prior illegal entry conviction operates to increase the punishment of those who re-enter the United States illegally. It stands to reason that, unlike the firearms statute, § 1325 focuses on the reliability of the predicate conviction to enhance punishment for an illegal entry recidivist. *Cf., Burgett v. Texas*, 389 U.S. 109 (1967) (a conviction invalid under *Gideon* could not be used for enhancement of punishment under a State's recidivist statute); *United States v. Tucker*, 404 U.S. 443 (1972) (convictions

obtained in violation of *Gideon v. Wainwright* could not be considered by a court in sentencing a defendant after a subsequent conviction). As a result, *Lewis*, itself, does not preclude the Defendant's challenge.

*Custis*, on the other hand, provides succor to the Government's position. There, a defendant sought to collaterally attack a prior conviction in a firearms case based upon an alleged denial of the effective assistance of counsel, and an unknowing and unintelligent guilty plea. *Custis*, 511 U.S. at 493. The Supreme Court held that "none of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." *Id.* at 496–97 (citing *Johnson v. Zerbst*, 304 U.S. 458, 459 (1938)). The Supreme Court refused to go beyond the right to have appointed counsel as a basis for a collateral attack, holding that "failure to appoint counsel for an indigent defendant was a unique constitutional defect." *Id.* at 496.

The *Custis* Court also found practical reasons to reject challenges that went beyond ones premised on the failure to appoint counsel. In *Gideon*-type cases, the failure will generally appear from the judgment roll itself, or from an accompanying minute order. "But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States." *Custis*, 511 U.S. at 496. As such, the interest in promoting the finality of judgments provided additional support for the Supreme Court's constitutional conclusion.

Here, Defendant's challenges are based upon ineffective assistance of counsel and an involuntary plea and waiver of appeal which present the types of concerns that led the Supreme Court in *Custis* to deny defendant a right to challenge his predicate conviction. Accordingly, the Court holds that, under the reasoning of *Custis*, Defendant is not entitled to challenge his prior conviction for constitutional violations other than ones premised on *Gideon*.

## B. Defendant Fails to Show How His Predicate Conviction Violates Due Process, Rule 11, or the Sixth Amendment

As concluded above, Defendant is not permitted to challenge his prior § 1325 conviction by a motion to dismiss the indictment. Nonetheless, were such a challenge available, Defendant's arguments also fail on the merits. First, Defendant argues that Operation Streamline in its entirety is coercive and therefore violates Due Process. (ECF No. 29-1 at 10-13.) Then, Defendant points to two specific errors – a violation of Rule 11 and a violation of *Padilla* – which he contends rendered his previous waiver unknowing or involuntary. (ECF No. 29-1 at 8-10, 13-14.) The Court rejects all three arguments for the reasons below.

### 1. Defendant Has Not Shown that the Government Violated his Due Process Rights Through Operation Streamline.

Defendant first asks the Court to rule on the constitutionality of Operation Streamline in its entirety. (ECF No. 29-1 at 7, 10–13.) Defendant alleges that Operation Streamline violates due process because it subjected him to a plea colloquy indistinguishable from those of other defendants, required the court to hear a large number of pleas in a single day (including, multiple pleas concurrently), and subjected the Defendant to pre-hearing confinement. (*Id.* at 3–12.) In short, Defendant argues that his rights were violated when the court took "70 pleas en masse." (*Id.* at 7.)

However, the Ninth Circuit has already held that holding plea hearings *en masse* is not sufficient to find a constitutional violation. *See United States v. Diaz-Ramirez*, 646 F.3d 653, 657 (9th Cir. 2011) (rejecting defendants' argument that, given the "en masse nature of their plea proceedings, a reviewing court cannot discern whether they actually understood their rights and intelligently chose to waive them by pleading guilty"). Even in such circumstances, defendants are assigned counsel who can explain "the nature of the charge and the elements of the crime." *Id.* (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). And, defendants are, of course, able to ask questions, request trial, and decline the plea. *Id.* Relying on such observations, the Ninth Circuit has concluded that,

unlike Rule 11, a defendant's constitutional right to due process does not require that he receive "individualized instruction" as long as the record is not silent as to Defendant's decision to plead guilty, with specific reference to the Operation Streamline process in Arizona. *Id.*; *see also Boykin v. Alabama*, 395 U.S. 238, 244 (1969). Thus, while the Ninth Circuit has acknowledged that "certain aspects of group plea proceedings violate various provisions of Rule 11," *see U.S. v. Aguilar-Vera*, 698 F.3d 1196, 1197–98 (9th Cir. 2012) (citing *U.S. v. Escamilla–Rojas,* 640 F.3d 1055, 1060 (2011)), it has yet to find the program provides the basis for a categorical violation of due process. *Id.*; *see* Alexandra Natapoff, *Aggregation and Urban Misdemeanors*, 40 FORDHAM URB. L.J. 1043, 1072–73 (2013).

      Defendant's arguments to the contrary are unpersuasive. Defendant, for example, cites to forensic psychologists, CBP data, and several other cases to illustrate the troubling conditions in pre-hearing confinement and the likelihood of defendants being confused or ill-informed during group pleadings. (ECF No. 29 at 3–6, 10–12.) Defense counsel, however, does not explain how these documents relate to Defendant's specific conviction. Defendant also offers the declaration of his counsel in 2012 regarding that conviction to assert that (1) on the day of his plea, Defendant's attorney, Mr. Daniel Anderson, was "appointed five (5) clients;" (2) on the day of his plea, 69 other defendants "were interviewed, pleaded guilty and [] sentenced before 5:00 p.m.;" (3) Defendant "was shackled in five-point restraints" while detained; and (4) Defendant had only a little over half an hour to confer with his attorney "about the crime, review the discovery, discuss the plea offer, discuss the sentencing recommendation and discuss the consequences of his plea and any potential defenses" before pleading guilty. (*See* ECF No. 29-1 at 12; ECF No. 29-2, Decl. of Atty. Daniel Anderson; *see also* ECF No. 57-2, Second Decl. of Atty Daniel Anderson.) Defendant also argues that, as a part of Operation Streamline, defendants do not receive bond hearings and cannot effectively participate in their own defense. (ECF No. 46 at 10–13.)

While the Court recognizes the difficulty created by such circumstances for both defendants and counsel alike, the Court lacks the authority to find a constitutional violation merely because Defendant was subject to an *en masse* hearing in a short time period because the Ninth Circuit has repeatedly affirmed the constitutionality of such hearings. *See United States v. Chavez-Diaz*, 949 F.3d 1202, 1205 (9th Cir. 2020) (citing *Diaz-Ramirez*, 646 F.3d at 656–58) ("The hearing involved numerous § 1325 defendants appearing together, a practice we have previously approved."); *see also United States v. Arqueta-Ramos*, 730 F.3d 1133, 1135 (9th Cir. 2013) (noting that "the court did not err by advising the defendants of their rights en masse . . ."). Defendants' above-cited facts also do not distinguish Mr. Gallegos-Aparicio's experience from that of other criminal defendants in Operation Streamline. The cases Defendant cites, moreover, are inapposite because they concern a defendant's right to challenge an infirm detention order under 8 U.S.C. § 1326(d), and not a prior conviction under Rule 11 or its related due process principles. (*Cf.* ECF No. 29-1 at 10–12.) And, for the reasons outlined in the Rule 11 section below, Defendant's plea colloquy and agreement amount to "affirmative evidence that [Defendant] entered his plea knowingly and willfully." *United States v. Jimenez-Lopez*, 472 F. App'x 437, 438 (9th Cir. 2012).

Thus, the Court finds that Defendant has not met his burden of demonstrating that being subjected to Operation Streamline amounts to a constitutional violation. *Diaz-Ramirez*, 646 F.3d at 656.

### 2. The 2012 Court Committed Plain Error by Violating Rule 11 but that Error is Harmless.

Defendant also asks the Court to dismiss the indictment on the basis of a specific Rule 11 violation, namely, that "the judge failed to accurately state the elements of the crime of illegal entry in violation of Title 8 U.S. § 1325 by failing to state and explain that Mr. Gallegos-Aparicio had to enter 'free from official restraint.'" (ECF No. 29-1 at 7). The Court finds that this error, though plain, did not affect the fairness of the proceedings and was, in essence, harmless under the circumstances.

### i. Defendant Did Not Waive His Collateral Attack with His Plea.

First, the Court recognizes that the Government's assertion that Defendant's right to challenge his prior conviction was waived in 2012 is not without merit. A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if "(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (citation omitted). Here, Defendant entered a guilty plea in which he expressly waived his right to appeal and to collaterally attack his judgment and sentence vis-à-vis his plea agreement. (ECF No. 29-4 at 3, ¶ 6.) The plea agreement states that Defendant "waived . . . any right to collaterally attack defendant's conviction and sentence under [28 U.S.C. 225] or any other collateral attack." (*Id.*) Defendant's plea colloquy, moreover, indicates that Defendant was represented by counsel and that he accepted the plea agreement. (ECF No. 29-3 at 6.) Consequently, it may be reasonable to conclude that Defendant has waived a right to challenge his underlying 2012 conviction by collateral attack. *See United States v. Cisneros-Cuevas*, No. 15-CR-1837-BAS, 2017 WL 432817, at *2 (S.D. Cal. Jan. 31, 2017) (finding that Defendant "waived his right to file this collateral attack on his sentence" because he "agreed to waive his right to attack the conviction or sentence" in his plea agreement).

However, here, the Court is concerned that the waiver was not adequately explained to Defendant given the plea colloquy. Specifically, the magistrate judge's questions confirming Defendant's understanding of the waiver were not individualized to the Defendant. For example, where the court asks if Defendant understands that he is giving up his "appeal rights" or "his right to a presentence report," the transcript reflects on a communal response – "'Yes' by all." (ECF No. 29-3 at 5.) The transcript, moreover, does not include a question to Defendant inquiring whether he understands that he was also waiving his right to collaterally attack the conviction.

The Ninth Circuit has recognized that no judge can reasonably differentiate between multiple defendants' responses in such circumstances:

> To be specific, no judge, however alert, could tell whether every single person in a group of 47 or 50 affirmatively answered her questions when the answers were taken at the same time. No judge could have detected a mute response offered in the midst of a medley of voices saying "Si." No judge, however conscientious, could have possessed the ability to hear distinctly and accurately fifty voices at the same time. The record reflects the most that could be detected: a "General Yes." How different that record is from the hearing in which four of the appellants were questioned together, and the record reflects responses from "All." Neither an indistinct murmur or medley of yeses nor a presumption that all those brought to court by the Border Patrol must have crossed the border is sufficient to show that each defendant pleaded voluntarily.

*See United States v. Roblero-Solis*, 588 F.3d 692, 700 (9th Cir. 2009). Consequently, given this ambiguity, the Court does not find that Defendant's waiver as to appeal and collateral attack was knowing and voluntary.

### ii. Merits of Rule 11 Argument

Defendant's Rule 11 argument is compelling on first blush. Rule 11(B)(1) and Due Process require the district court to advise the defendant of each critical element of the offense, among other warnings. *See United States v. Keller*, 256 F. App'x 184, 185 (9th Cir. 2007) (vacating plea agreement and remanding for further proceedings after concluding that "defendant was not accurately informed of the elements of the" offense). Rule 11(B)(3) requires the court to "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(B)(3).

"An alien does not reenter, and cannot be considered found in, the United States until he or she is physically present in the country and free from official restraint." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1191 n.3 (9th Cir. 2000) (citing *United States v. Pacheco–Medina*, 212 F.3d 1162, 1166 (9th Cir. 2000)). And, neither the plea colloquy nor plea agreement mention the requirement to be "free from official restraint." (ECF Nos. 29-3 at 6, 29-4 at 5.) Consequently, the Streamline Court erred by failing to comply with Rules 11(B)(1) and 11(B)(3). *See Bousley v. United States*, 523 U.S. 614,

618-19 (1998); *United States v. Minore*, 292 F.3d 1109 (9th Cir. 2002). That error,[2] moreover, is "plain on the face of the record." *Diaz-Ramirez*, 646 F.3d at 656 (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)).

But that is not the end of the Court's inquiry. "A variance from the requirements of [Rule 11] is harmless," and does not require reversal, "if it does not affect substantial rights." *United States v. Arqueta-Ramos*, 730 F.3d 1133, 1139 (9th Cir. 2013) "For an error to affect substantial rights, 'in most cases . . . the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" *United States v. Collins*, 684 F.3d 873, 881 (9th Cir. 2012). The Court also considers whether the alleged Rule 11 violation affected the "fairness, integrity or public reputation of judicial proceedings." *See Johnson v. United States,* 520 U.S. 461, 466–467 (1997).

Defendant does not surpass this threshold. Defendant's plea agreement and colloquy support the inference that Defendant understood he was pleading to a violation of 8 U.S.C. §1325. *Cf., e.g.*, *United States v. Muniz-Martinez*, 661 F. App'x 900, 903 (9th Cir. 2016) (finding that the magistrate judge violated Rule 11(b)(1)(M) by failing to advise defendant of the court's duty to calculate the sentencing range because the Court inferred defendant understood the Guidelines mechanism given counsel's statements to the court that he had discussed defendant's offense level and criminal history prior to the hearing with the defendant). Though the factual basis for the plea agreement may be imperfect, (*cf.* ECF No. 29-1 at 9), it largely supports a conviction for illegal re-entry:

> I, Marcos GALLEGOS-Aparicio, am a citizen of Mexico. On or about February 27, 2012, at or near Sells, Arizona, in the District of Arizona, I, Marcos GALLEGOS-Aparicio, was found in the United States. I admit that prior to my re-entry, I was lawfully denied admission, excluded, deported and removed from the Untied States through Nogales, Arizona on April 04, 2001. I did not obtain the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the

---

[2] Defendant also asserts a violation of Rule 11(B)(2) (failing to confirm the plea is voluntary). (*See* ECF No. 29-1 at 12–23). Because the Court finds that Defendant's plea was voluntary for the reasons articulated in this Order, the Court finds no violation of Rule 11(B)(2).

>United States prior to my illegal presence in the United States. Furthermore, as evidenced by my illegal presence in the United States, I admit that I entered the the [sic] United States of America from the United States of Mexico, at a time and place other than as designated by Immigration Officers of the United States of America.

(ECF No. 29-4 at 5.) Defendant's contemporaneous statements at the hearing corroborate these facts, including that he did not "have papers allowing [him] to enter the United States lawfully," that he "illegally enter[ed] the United States near Sasabe," and that he is a "citizen of Mexico." (ECF No. 29-3 at 7.) Defendant also does not "now allege that [he] would have pleaded differently if the [] judge had" not erred. *See United States v. Escamilla-Rojas*, 640 F.3d 1055, 1061 (9th Cir. 2011); *but see Arqueta-Ramos*, 730 F.3d at 1141 (noting that it is "not [Defendant's] burden to show that she would not have pled guilty absent the Rule 11 error").

Consequently, because Defendant "unequivocally admitted in his plea agreement" to being unlawfully present in the United States after having been removed once in 2001, the Court finds that "it is not unfair to hold [Defendant] to his guilty plea." *United States v. Minore*, 292 F.3d 1109, 1120 (9th Cir. 2002). The Court's decision comports with those of other courts who have found errors of a similar magnitude to be harmless. *See, e.g.*, *United States v. Cotton*, 535 U.S. 625, 626 (2002) (finding that ordering a sentencing enhancement predicated on a fact not found in the indictment was harmless where the facts overwhelmingly supported the enhancement); *U.S. v. Escamilla–Rojas*, 640 F.3d 1055 (9th Cir. 2011) (finding that a two-hour delay between group advisement and individual questioning during a plea colloquy was harmless error); *United States v. Juarez-Rodriguez*, 531 F. App'x 830 (9th Cir. 2013) (noting in response to an allegation that the district court failed to "determine that his plea was voluntary and did not result from force, threats, or promises" that "[a]ny Rule 11 error was harmless because there is no indication in the record that [Defendant] would have pled differently in the absence of the alleged errors").

For foregoing reasons, Defendant's claims do not establish that his plea was unknowing or involuntary.

### 3. Sixth Amendment Violation

Defendant also attacks the Government's reliance on his 2012 conviction on the basis that it violated his Sixth Amendment right to counsel. (ECF No. 29-1 at 13–14; ECF No. 46.) For the following reasons, the Court finds this argument unpersuasive.

In his motion, Defendant first asserts that "Arizona Magistrate-Judge never advised Mr. Gallegos-Aparicio of any rights to relief in Immigration Court nor the immigration consequences of his guilty," including that "the misdemeanor conviction could be a predicate to enhance any future charges of illegal entry from a misdemeanor to a felony." (ECF No. 29-1 at 14.) This argument fails as a matter of law. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1241 (9th Cir. 2011) ("the district court did not err in failing to advise Delgado of the immigration consequences of his plea"); *accord United States v. Chavez*, 542 F. App'x 691 (9th Cir. 2013).

Defendant also asserts the more persuasive argument that the plea is invalid because defense counsel did not meet their minimum requirements under the Sixth Amendment by violating *Padilla v. Kentucky*, 559 U.S. 356 (2010).[3] Specifically, Defendant asserts that he was denied his Sixth Amendment right to counsel "due to time constraints, presence of law enforcement, five-point shackles, and the inability to form the kind of trusting relationship that is a predicate for any advi[c]e to be useful to the client." (ECF No. 46 at 7.)

The Sixth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment guarantees a state criminal defendant the right to

---

[3] Notably, Defendant does not expressly call out ineffective assistance in his initial brief. (ECF No. 29-1 at 14.) Nonetheless, because the cited cases raised these types of issues, and Defendant clarifies his argument in reply, the Court deems the argument not waived. *Cf. Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 851 (9th Cir. 2012) (finding that arguments raised for the first time in a reply brief are waived).

effective assistance of counsel at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985). Establishing that counsel was ineffective, and thus violated that right, requires that defendant making two distinct showings: (1) that counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687–93 (1984). The *Strickland* standard applies in the plea context. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Defendant's argument fails this standard as to both prongs. First, Defendant fails to make out a clear violation. In the context of noncitizen pleas, the Supreme Court has held "that the Sixth Amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013). However, there is no requirement that counsel advise a non-citizen client that a particular conviction may result in an enhanced sentence for some future, undetermined criminal conduct. *See United States v. Roblero-Solis*, 588 F.3d 692, 698 (9th Cir. 2009) (quoting *Spencer v. Kemna*, 523 U.S. 1, 15 (1998)) (noting in the context of a Rule 11 challenge to a conviction resulting from an group plea that the "possibility of 'violating the law, getting caught, and being convicted' does not constitute a consequence preventing mootness," in contrast to "adverse consequences that will result even if [a defendant does] not violate the law"). The Court is not aware of any such precedent, and defense counsel does not point to one now. In addition, at least one court has expressed reservations against requiring such advice, including that doing so may put counsel in the untenable position of advising criminal conduct. *U.S. v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("Using *Padilla* as a springboard, we would be forced to hold that counsel has a constitutional duty to advise the client as to how he might best continue his criminal activity while minimizing his risk of future punishment.").

Additionally, even if there were a violation, Defendant is required to show prejudice resulted from the alleged error. *See U.S. v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991). In other words, it is the defendant's burden to convince the Court that rejecting the plea would have "been rational under the circumstances." *Padilla*, 559 U.S. at 371 (citing

17

19-cr-2637-GPC

*Roe v. Flores–Ortega*, 528 U.S. 470, 480, 486 (2000)). And, while Defendant argues that prejudice should be "presumed" given a structural[4] violation to Defendant's access to counsel, (*cf.* ECF No. 46 at 8–10), the Ninth Circuit's law is replete with examples of courts considering the question of prejudice in the context of ineffectiveness claims with respect to counsel's advice on immigration consequences. *See, e.g.*, *United States v. Rodriguez-Vega*, 797 F.3d 781, 789 (9th Cir. 2015); *United States v. Nuwintore*, 696 F. App'x 178, 180 (9th Cir. 2017); *Khatkarh v. Becerra*, No. 2:14-CV-0079-KJM, 2020 WL 1082771, at *12 (E.D. Cal. Mar. 5, 2020).

Here, the record weighs against a finding that Defendant was prejudiced. The Court finds it especially significant that Defendant has been charged *twice* – once in 2001 and again in 2012 – before with misdemeanor violations of §1325. It also appears that Defendant's 2012 misdemeanor was negotiated down from a felony as part of the plea agreement. This arrangement is commonly requested by defense counsel to the benefit of their clients: "Often, if a given defendant is charged for a first-time felony of re-entry after deportation, under 8 U.S.C. § 1326, a defense attorney can suggest to the prosecutor to allow the defendant to plead to an illegal entry misdemeanor to avoid the felony conviction." Robert J. McWhirter & Jon M. Sands, *A Primer for Defending A Criminal Immigration Case*, 8 Geo. IMMIGR. L.J. 23, 29–30 (1994). Because Defendant could otherwise have been charged with a felony in 2012, it would have been irrational under the circumstances for Defendant to reject the plea, regardless of collateral consequences.

For the forgoing reasons, Defendant's claim fails to establish that his plea was unknowing or involuntary on the basis of a Sixth Amendment violation.[5] As such, Defendant's Motion to Dismiss the Indictment is **DENIED**.

---

[4] It is not clear, moreover, to the Court the allegations herein rise to the level of a structural error as defined in *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). "These 'rare' errors are those undermining 'the constitution of the trial mechanism': the presence of a biased judge or the denial of the right to counsel." *See United States v. Roblero-Solis*, 588 F.3d 692, 700 (9th Cir. 2009) (quoting *id.*).

[5] In Reply, Defendant also argues that the facts here demonstrate a separate, categorical violation of Defendant's Sixth Amendment right to have an attorney investigate their case because it is "structurally

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 13, 2020

                                            *[signature]*
                                            Hon. Gonzalo P. Curiel
                                            United States District Judge

---

impossible" to do so in merely thirty minutes. (ECF No. 46 at 3–6.) This forceful argument stems from counsel's duty to engage in an objectively reasonable investigation. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003). Defendant's argument, however, is first raised in reply and thus the Court declines to address it now. *See Bohn*, 956 F.2d at 209. In the alternative, the Court finds the argument fails under the Ninth Circuit precedent's sanctioning Operation Streamline.