UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>MARCOS GALLEGOS-APARICIO,<br><br>                              Defendant. | Case No.: 19-CR-2637-GPC<br><br>**ORDER DENYING MOTION TO DISMISS INDICTMENT UNDER THE EQUAL PROTECTION CLAUSE**<br><br>**[ECF No. 57.]** |

Pending before the Court is Defendant Marcos Gallegos-Aparicio's motion to dismiss the Superseding Indictment on the basis that 8 U.S.C. § 1325 violates the equal protection component of the Fifth Amendment due process clause under the test set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).  ECF No. 57.  For the reasons that follow, the Court DENIES the motion to dismiss.

I.   **Procedural History**

On July 12, 2019, an Indictment was filed charging Defendant with Attempted Unlawful Entry by an Alien, a felony, in violation of 8 U.S.C. § 1325(a)(1). The Indictment alleges that Defendant knowingly and intentionally attempted to enter the

1

1  United States with the purpose of entering the United States at a time and place other than
2  as designated by immigration officers in violation of 8 U.S.C. § 1325(a)(1).  ECF No. 18.
3  On October 14, 2020, Mr. Gallegos-Aparicio filed a motion to dismiss the Indictment
4  against him.  ECF No. 57.  The motion is nearly identical to that filed by the defendant in
5  *United States v. Rios-Montano*, 19CR2123-GPC, ECF No. 70.  The Government's
6  opposition here is also nearly the same as the opposition filed in that case.  ECF No. 58;
7  19CR2123-GPC, ECF No. 71.  On December 8, 2020, the Court ruled on the *Rios-
8  Montano* motion to dismiss in a 14-page order which addresses the salient points in the
9  arguments raised in the instant matter.  *United States v. Rios-Montano*, No. 19CR2123-
10  GPC, 2020 WL 7226441 (S.D. Cal. Dec. 8, 2020).  Mr. Gallegos-Aparicio asserts that
11  Section 1325 is unconstitutional under *Arlington Heights*, 429 U.S. 252 (1977), because
12  its precursor, the illegal entry statute, was enacted in 1929 with a discriminatory purpose
13  and has a disparate impact against Mexicans and other Latinx individuals in violation of
14  the equal protection component of the Fifth Amendment.  ECF No. 57.  On October 29,
15  2020, the Government filed a response in opposition.  ECF No. 58.  On November 5,
16  2020, Mr. Gallegos-Aparicio filed a reply. ECF No. 59.  On November 12, 2020, the
17  Court held a hearing on the motion to dismiss. ECF No. 60.

For the following reasons, and considering the applicable law and the Parties' arguments, the Court **DENIES** Defendant's motion.

**II.  Analysis**

**A.  *Arlington Heights* applies to Section 1325.**

The Court first must determine whether the discriminatory intent test outlined in *Arlington Heights* applies to a criminal immigration law such as Section 1325.  "[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups."  *Washington v. Davis*, 426 U.S. 229, 239 (1976) (citing *Bolling v. Sharpe*, 347

U.S. 497 (1954).  An equal protection violation need not appear on the face of the statute; rather, a litigant may show the challenged law was enacted with an "invidious discriminatory purpose [which] may often be inferred from the totality of the relevant facts." *Id.* at 241−42.

The Court finds that Section 1325 must be reviewed under the *Arlington Heights* framework to determine whether it denies Mr. Gallegos-Aparicio equal protection of the laws. *See Rios-Montano*, 2020 WL 7226441, at *1–2.

**B. Mr. Gallegos-Aparicio has not met his burden under *Arlington Heights*.**

1. *The Court must consider the Congressional motivation underlying the enactment of Section 1325, the statute which Mr. Gallegos-Aparicio is charged with violating.*

*Arlington Heights* states that the "sensitive inquiry" of "[d]etermining whether invidious discriminatory purpose was a motivating factor" for the legislative enactment requires looking to the disparate impact of the official action, "[t]he historical background of the decision"; "[t]he specific sequence of events leading up to the challenged decision"; "[d]epartures from the normal procedural sequence" "[s]ubstantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and "[t]he legislative or administrative history . . . , especially when there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Arlington Heights*, 429 U.S. at 266−68.  As a threshold matter, this Court must determine which Congress's intent is subject to review.  Mr. Gallegos-Aparicio argues that the Court should look to the initial enactment of the statute criminalizing unlawful re-entry, which occurred in 1929.  The Government contends that the Court must look to the provision Mr. Gallegos-Aparicio is actually charged with violating−Section 1325(a)(1), enacted in its current form in 1990.

In 1929, Congress enacted the Undesirable Aliens Act, which provided that "[a]ny alien who hereafter enters the United States at any time or place other than as designated by immigration officials or eludes examination or inspection by immigration officials . . . shall be guilty of a misdemeanor." Act of Mar. 4, 1929, Pub. L. No. 70-1018, § 2. Section 1325 was enacted in its current form in the Immigration Act of 1990, criminalizing attempted unlawful entry in addition to unlawful entry. Immigration Act of 1990, Pub. L. No. 101-649, § 543(b)(2), 104 Stat. 5059 (codified as amended 8 U.S.C. §1325(a)(1)).

*Arlington Heights* directs the Court to look at the motivation behind the official action being challenged. *See Arlington Heights*, 429 U.S. at 265–67 (describing intent analysis in terms of "the challenged decision"). The challenged decision in this case is the decision to criminalize the conduct Mr. Gallegos-Aparicio is charged with committing—attempting unlawful entry. This means that the Court must seek to discern the intent of the Congress that enacted that provision of Section 1325, rather than the intent of previous Congresses.

Mr. Gallegos-Aparicio's reliance on *Ramos v. Louisiana* and *Espinoza v. Montana Department of Revenue* is unavailing. These cases certainly support the contention that subsequent enactments of a statute do not erase its historical context. But *Ramos* and *Espinoza*, neither of which involved an equal protection challenge, did not hold that the discriminatory motivations of a previous legislature are determinative of the outcome of an *Arlington Heights* analysis of a law enacted by a subsequent legislature. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1401 (2020); *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2258–59 (2020). Crucially, despite the well-documented discriminatory history of the provisions at issue in both cases, neither *Ramos* nor *Espinoza* found that the currently operative provisions had been enacted with discriminatory intent, as is required to find an equal protection violation under *Arlington Heights*. *See Ramos*, 140 S. Ct. at

1401 n.44 (noting dissent's argument that "Louisiana and Oregon eventually recodified their nonunanimous jury laws in new proceedings untainted by racism," and disagreeing with the import, but not the accuracy, of that claim); *Espinoza*, 140 S. Ct. at 2259 (noting, and not questioning, Montana's argument that it re-adopted the no-aid provision in the 1970s "for reasons unrelated to anti-Catholic bigotry"). Rather, these decisions confirm that the historical context of legislative enactments are relevant, a point already reflected in the *Arlington Heights* framework.

In some situations, the legislative history of past enactments may be highly probative of the motivations of the legislators who enacted the current law, but the Court cannot automatically impute these past motivations to the current law and forgo analysis of the enacting legislature required by *Arlington Heights*. *Cf. Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018) ("[W]e have never suggested that past discrimination flips the evidentiary burden [of the intent test] on its head."). The Court therefore must consider whether Mr. Gallegos-Aparicio has shown that Congress's 1990 enactment of Section 1325 was motivated at least in part by a discriminatory purpose.

2. *Mr. Gallegos-Aparicio has not shown Section 1325 was enacted with a racially discriminatory purpose.*

The Court will address the *Arlington Heights* factors in turn to determine whether Mr. Gallegos-Aparicio has shown that "invidious discriminatory purpose was a motivating factor" in the enactment of the current Section 1325. *Arlington Heights*, 429 U.S. at 266.

a. **Historical background**

In his motion to dismiss, Mr. Gallegos-Aparicio describes at length the historical background of the 1929 Undesirable Aliens Act, the precursor for today's provision criminalizing unlawful entry. This information is certainly relevant to the Court's consideration of the historical backdrop against which Section 1325 was adopted. *Cf.*

1   *Rogers v. Lodge*, 458 U.S. 613, 624–25 (1982) (considering past laws intended to
2   disenfranchise black people as evidence of intent that at-large election system was
3   adopted with a discriminatory purpose); *Democratic Nat'l Comm. v. Hobbs*, 948 F.3d
4   989, 1039 (9th Cir. 2020) (looking to legislature's "long history of race-based
5   discrimination, disenfranchisement, and voter suppression" in determining law passed in
6   2016 was motivated by a discriminatory purpose).

This history suggests that at least some members of Congress were motivated to support immigration restrictions at least in part out of a desire to maintain the supposed purity of the white race and prevent racial mixing, and intended the laws to target races they deemed undesirable. The racially discriminatory motives of the legislators who advocated for the original unlawful entry law, which is substantially similar to the provision in force today, as well as the blatant racism that characterized the immigration debate of the early twentieth century more generally, is relevant to the Court's determination of whether the 101st Congress in 1990 adopted the current Section 1325 with a similarly impermissible intent. However, because this historical background is remote in time to the Immigration Act of 1990, its probative value as to the motivations of the 101st Congress is limited. *See City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 74 (1980).

### b. Relevant legislative history, sequence of events leading to enactment, and departures from normal practice of decisionmaking

The crux of the *Arlington Heights* intent test is to discern the motive of the government officials that engaged in the challenged action, yet Defendant has failed to provide any legislative history or other evidence suggestive of the motives of the 101st Congress to support his argument. While not specifically referencing the 1929 law or condemning white supremacy or eugenics, the legislative history for the 1990 legislation reveals an about face away from the racist trope that accompanied the enactment of the

1929 immigration law.  Ultimately, the question before the Court is whether a law related to one that was stained by white supremacy can ever be cleansed without a formal condemnation of the earlier law. The answer derived from a number of federal court decisions is yes.

In *Johnson v. Governor of the State of Florida*, the Eleventh Circuit found that Florida's 1968 re-enactment of a disenfranchisement provision originally adopted in 1868 "eliminated any taint from the allegedly discriminatory 1868 provision." 405 F.3d 1214, 1223 (11th Cir. 2005).  In so finding, the court emphasized the lengthy deliberative process preceding the 1968 enactment, during which there was no allegation of racial animus. *Id.; cf. Cotton v. Fordice*, 157 F.3d 388, 392 (5th Cir. 1998) (rejecting argument that a disenfranchisement provision could be invalidated solely on the basis that original version of the provision was adopted with a discriminatory purpose, where provision's challenger "offered no such proof regarding the current version."); *Hayden v. Paterson*, 594 F.3d 150, 166–67 (2d Cir. 2010).

The thorough deliberative process Congress undertook in 1990, combined with the lack of legislative history addressing Section 1325, underscores the absence of proof of the 101st Congress's discriminatory intent.

While Mr. Gallegos-Aparicio has not cited any part of the legislative history from 1990 which discloses any racial animus in the law against aliens from Latin America, a review of the legislative history reveals a balancing of valid immigration considerations such as reunifying families, providing support of Central Americans displaced by violence, protecting jobs for those legally in the United States and protecting the safety and health of the community. *See United States v. Rios-Montano*, 2020 WL 7226441, at *5–6.  The Court concludes that the legislative history for the 1990 legislation does not reveal any discriminatory motive and provides no support for Mr. Gallegos-Aparicio's position.

### c.     Disparate impact

Although a showing of disparate impact on its own is typically insufficient to show an equal protection violation, "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Davis*, 426 U.S. at 242.  Mr. Gallegos-Aparicio contends that Mexicans and other Latin Americans make up the vast majority of individuals apprehended at the border which supports a finding that Section 1325 bears more heavily on Latinx people.  The Government does not dispute the statistics cited by Mr. Gallegos-Aparicio, but argues they are due solely to Mexico's geographic proximity to the United States and that Mr. Gallegos-Aparicio therefore cannot show disparate impact.

Although Latinx people are likely disproportionately affected by Section 1325, the disparate impact alone in this case is not stark enough to show discriminatory motive, given that the disparity is explainable on grounds other than race.  *See Arlington Heights*, 429 U.S. at 266.  The Court therefore finds that Mr. Gallegos-Aparicio has not met his burden of showing that Congress acted with a racially discriminatory motive in enacting Section 1325.

### III.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Superseding Indictment under *Arlington Heights* is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 10, 2020

Hon. Gonzalo P. Curiel
United States District Judge